In re BASS' ESTATE.

No. 31845.   Dec. 2, 1947.

Rehearing Denied March 9, 1948.

*190 P. 2d 800.*

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for plaintiff in error.

E. L. Mitchell and C. W. King, both of Oklahoma City, for defendants in error.

HURST, C.J.    On January 1, 1930, D. C. Bass and Sophia Bass, his wife, as first parties, and their seven children, as second parties, executed an instrument in writing referred to as "Declaration of Trust", whereby they created an irrevocable trust designated as "The Bass Estate". The Declaration of Trust provided that D. C. Bass should convey his property to the trust; that there should be a board of directors of the trust consisting of Bass and the seven children; that Bass should be the president of the board and the general manager of the trust estate; that he should receive all the net income from the estate during his lifetime for the use and benefit of himself and wife; that in the event of his death prior to the expiration of the trust, his interest in the estate should thereby be extinguished and the income from the trust estate should be divided equally among the seven children; that the trust should exist for 20 years from January 1, 1930; and that upon the expiration of said term of 20 years the trust estate should be wound up either by sale and division of the proceeds among the children as beneficiaries or the property should vest in the beneficiaries, as the trustees should decide.

On the day the Declaration of Trust was executed, Bass conveyed the property to the trust entity.  He reserved no reversionary interest or possibility of reverter in the property so conveyed. Mrs. Bass died within a year after the execution of the Declaration of Trust, and Bass died on December 10, 1938. On May 6, 1944, pursuant to due notice, and after a hearing at which the facts were agreed upon by a written stipulation, the Oklahoma Tax Commission made an order assessing a transfer tax against the estate of D. C. Bass includ-

16

ing in the gross estate that property embraced in the Declaration of Trust made on January 1, 1930, and calculating the assessment in accordance with article 5, ch. 66, S.L. 1935, p. 274.

It was stipulated that the Declaration of Trust was not made in contemplation of death; that no administration proceedings have been had upon the estate of Bass; and that he died intestate, leaving as his sole heirs at law his seven children, who signed the Declaration of Trust. From said order of the Oklahoma Tax Commission, Henry B. Bass, son of D. C. Bass, deceased, as representative of his estate has appealed.

Appellant contends (1) that the question of whether a death duty could be assessed based upon the value of the property so transferred must be determined by a consideration of the law in force in 1930 when the transfer was made, O. S. 1931, sections 12469-12497, which was an inheritance or succession tax law, and that since Bass reserved no reversionary interest or possibility of reverter in the property the transfer was not "intended to take effect in possession or enjoyment at or after" the death of the trustor, so as to be taxable under the law then in effect; (2) that if it was taxable under the law then in effect, no tax was due after the allowance of proper exemptions; (3) that the law in effect at the time of the death of Bass, article 5, ch. 66, p. 274, S.L. 1935, which was an estate tax law, and which was applied by the Oklahoma Tax Commission, cannot constitutionally be applied retroactively to a transfer made prior to its enactment.

The Tax Commission argues that the transfer was taxable under the 1935 Act, and that, since the economic benefit passed upon the death of Bass in 1938 and it is the passing of the economic benefit that the 1935 Act was intended to tax, the rule against retroactive application of tax laws is not violated.

At the outset, it is important to keep in mind the difference between **estate** taxes and **inheritance** taxes. Both are death duties, but the authorities recognize a distinction between them. An inheritance tax is one imposed upon "the right to receive" while an estate tax is one imposed upon "the privilege of transfer at death." "Death duties rest upon the principle that death is the generating source from which the authority to impose such taxes take their being." 28 Am. Jur. 12, §9.

In 1915, the Legislature enacted an inheritance tax statute (In re Whitson's Estate, 88 Okla. 197, 212 P. 752) levying a tax upon the transfer of property:

"First: By will or the intestate laws of this state; Second: By deed, grant, bargain sale or gifts, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death; Third: When the transferee becomes beneficially entitled in possession or expectancy by any such transfer whether made before or after the passage of this Act. Said tax shall be upon the clear market value of such property." S.L. 1915, p. 215.

This act was an amendment to the then existing inheritance tax statute, R.L. 1910, §7489, which was enacted at the 1907-8 Session of the Legislature. S.L. 1907-8, p. 733. There was a slight change in the verbiage of the two acts, but so far as material here the meaning was the same. The 1915 Act (C.O.S. 1921, §9891, O.S. 1931, §12469) remained in effect until 1935, and was the statute in effect in 1930, when the transfer here involved was made.

At the time of the enactment of the 1915 Act and the prior act, the clause "intended to take effect in possession or enjoyment at or after such death" was in the taxing statutes of New York and perhaps other states, and it had been construed to cover and made taxable transfers where the grantor re-

served the income for life. Re Brandreth (1902) 169 N.Y. 437, 62 N. E. 563, 58 L.R.A. 148. See, also, annotation in 49 A.L.R. '864, at 874.

By the subsequent decisions of the state courts, it has been almost uniformly held that under such an **inheritance or succession** tax provision the retention of income renders the transfer taxable at the death of the grantor or donor. See Worcester County National Bank v. Commission of Corporation Taxation (1931) 275 Mass. 216, 175 N. E. 726; Blodgett v. Guaranty Trust Co. (1932) 114 Conn. 207, 158 Atl. 245; In re Estate of Rising (1932) 186 Minn. 56, 242 N.W. 459; Russell v. Cogswell (1940) 151 Kan. 14, 98 P. 2d 179; In re Walker's Estate (1941) 100 Utah, 307, 114 P. 2d 1030; In re Jones' Estate (1944) 350 Pa. 120, 38 Atl. 2d 30; See annotations in 49 A.L.R. 874; 67 A.L.R. 1250; 100 A.L.R. 1247; 121 A.L.R. 364; 155 A.L.R. 850; 84 L.Ed. 641; American Digest, Taxation, Key No. 879(1).

On the other hand, the United States Supreme Court, in May v. Heiner (1930) 281 U.S. 238, 74 L. Ed. 826, 50 S.Ct. 286, 67 A.L.R. 1244, held that the retention of income did not subject the transfer to the Federal **estate tax under** a similar statutory provision.

The state decisions are based upon the theory that the shifting of the right of possession or enjoyment—the economic benefit—at the time, and by reason, of the death of the grantor is the occurrence or incident on which the tax is levied, and that such incident is a proper subject of an excise tax, and that it is not material that such incident followed from the prior absolute vesting of title in interest. On the other hand, the decision in May v. Heiner, and the other decisions following it, are based upon the theory that the shifting of the right of possession and enjoyment resulted from the prior vesting in interest, and that the transmission of the beneficial use and enjoyment was not the taxable event. As above stated, the state courts have almost uniformly adhered to the view expressed in the prior state decisions, and have refused to follow the rule of May v. Heiner. Some have sought to distinguish the two rules by pointing out that the tax imposed by the states is an **inheritance** or **succession** tax while that imposed by the Federal statute is an **estate** tax.

The philosophy back of the earlier United States Supreme Court cases is stated as folows:

"At the death of Mrs. May no interest in the property held under the trust deed passed from her to the living; title thereto had been definitely fixed by the trust deed. The interest therein which she possessed immediately prior to her death was obliterated by that event." May v. Heiner, 281 U.S. 238, 74 L. Ed. 826.

"The provision for the payment of income to the settlors during their lives did not operate to postpone the vesting in the sons of the right of possession or enjoyment. The settlors divested themselves of all control over the principal; they had no power to revoke or modify the trust. Coolidge v. Loring (235 Mass. 223, 126 N. E. 276). Upon the happening of the event specified without more, the trustees were bound to hand over the property to the beneficiaries. Neither the death of Mrs. Coolidge nor of her husband was a generating source of any right in the remaindermen. Knowlton v. Moore, 178 U.S. 41, 56, 44 L. Ed. 969, 975, 20 S.Ct. 747. Nothing moved from her or him or from the estates of either when she or he died. There was no transmission then. The rights of the remaindermen, including possession and enjoyment upon the termination of the trusts, were derived solely from the deeds." Coolidge v. Long, 282 U.S. 582, 75 L. Ed. 562.

The theory on which the state decisions are based is stated as follows:

"Our Legislature, without impugning the common-law concept of the vesting in interest of the remainder, which is effected by a gift with reservation of life estate or use to the donor, has simply recognized that death, although not the 'generating source' of interest, is yet the operative event which causes

'the vesting in possession,' and the coming into enjoyment, and so perfects title in the remainderman. That operation is plainly, and in any view, a succession of such real and substantial sort, with such vital and enlarging effect on property rights as to make it the proper subject of an excise." Rising's Estate v. State, 186 Minn. 56, 242 N.W. 459.

"Her present right to the future 'possession or enjoyment' of the trust fund, which was 'vested' in the sense of being assignable and transmissible by her during the life of the decedent (see Nickerson v. Harding, 267 Mass. 203, 207, 166 N.E. 703), was not 'possession or enjoyment within the meaning of the statute. The statute recognizes the familiar distinction between taking effect in possession or enjoyment and vesting in right, title or interest . . . ."

"Apparently the Legislature intended to reach for the purpose of taxation the shifting of the enjoyment of property—the 'economic benefits' thereof or 'economic interest' therein (compare Saltonstall v. Saltonstall, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565; Reinecke v. Northern Trust Co., 278 U.S. 339, 346, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397)—from a former owner at his death, even though such shifting or enjoyment followed necessarily from a prior transfer of title inter vivos. As was said in State Street Trust Co. v. Treasurer & Receiver General, 209 Mass. 373, 379, 95 N.E. 851, 852, 'The policy of the law is, that the owner of property shall not defeat or evade the tax by any form of conveyance or transfer, where after death the income, profit or enjoyment enures to the benefit of those who are not exempted.' " Worcester County National Bank v. Commissioner of Corporations and Taxation, 275 Mass. 216, 175 N.E. 726.

The more recent decisions of the United States Supreme Court seem to follow the philosophy of the state decisions, and to depart from the prior decisions, and base the tax upon the shifting of the possession and enjoyment—the economic benefit—caused by the death of the grantor or donor rather than the vesting of title in interest by the inter vivos grant or conveyance.

"Section 302(c), as demonstrated by Helvering v. Hallock, 309 U.S. 106, 84 L.Ed. 604, 60 S.Ct. 444, 125 A.L.R. 1368, reaches all inter vivos transfers which may be resorted to, as a substitute for a will, in making dispositions of property operative at death. It thus sweeps into the gross estate all property the ultimate possession or enjoyment of which is held in suspense until the moment of the decedent's death or thereafter. Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 111, 89 L. Ed. 782, 65 S.Ct. 508. In so doing, §302(c) pierces all the verbiage of 'unwitty diversities of the law of property.' Helverin gv. Hallock, supra (309 U.S. 118, 64 L.Ed. 611, 60 S.Ct. 444, 125 A.L.R. 1368). Testamentary dispositions of an inter vivos nature cannot escape the force of this section by hiding behind legal niceties contained in devices and forms created by conveyancers." Goldstone v. United States, 89 L.Ed. 1871, 325 U.S. 687, 65 S.Ct. 1323, 159 A.L.R. 1330.

In Knowlton v. Moore (1890) 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969, it was said that succession taxes, estate taxes and other similar death taxes are excise, not property, taxes and they rest upon the principle "that death is the generating source from which the particular taxing power takes its being." To the same effect see McGannon v. State, 33 Okla. 145, 124 P. 1063, Ann. Cas. 1914B, 620; 28 Am. Jur. 12. Taxes imposed upon transfers made in contemplation of death or intended to take effect in possession or enjoyment at or after death of the donor or grantor rest upon the same principle, the dominant purpose being to reach substitutes for testamentary dispositions and prevent evasion of the inheritance and estate tax laws. 28 Am.Jur. 81. Such taxes are likewise excise taxes. 28 Am.Jur. 82.

In 1933, soon after the decision in May v. Heiner was rendered, the Oklahoma Legislature amended the law so as to levy the inheritance or succession tax upon transfers "where the decedent reserved to himself, during his life, the

income from property included in any such transfer." The appellant argues that this was a legislative construction that such transfers were not taxable under the prior law, while the Tax Commission argues that the Legislature intended by the law to make plain the expression in the prior law "intended to take effect in possession or enjoyment at or after such death," as originally intended by it.

In 1935, the Legislature enacted article 5, ch. 66, p. 274, S. L. 1935, which levies an estate tax upon "the transfer of the net estate" of the decedent, less certain deductions and personal exemptions. Unlike the prior inheritance or succession tax law, the relationship of the beneficiaries or the amount they are entitled to is not taken into consideration in fixing the rate of the tax. The lien for the tax attaches to all the property transferred, whereas the lien of the tax under the prior law attached only to the interest transferred to each person, though it was the duty of the personal representative to pay the tax and take credit in his accounts. The law provided that it was intended as a substitute for the prior law, but should not apply to any transfer where the decedent died prior to its effective date, but that all such transfers should be governed by the prior law. It levied a tax on transfers "intended to take effect in possession or enjoyment at or after such death, whether made before or after the passage of this act", and covered transfers "where the decedent has reserved to himself during his life the income from the property included in any such transfer."

We think it is clear that by the 1935 Act, the Legislature intended to levy an **estate tax** upon transfers such as that involved in this case where the legal title was conveyed prior to its enactment, but where the grantor retained the income during his life and died after its enactment. We do not understand that the appellant contends otherwise. The sole question, then, is whether the act can be applied to such a transfer without violating constitutional principles. We think so. The act does not purport to levy the tax upon the transfer of the bare legal title. The tax is levied upon the transfer of possession and enjoyment—the economic benefit—which in the present case occurred at the time of the death of Bass after the passage of the act.

In Coolidge v. Long, 282 U.S. 582, 75 L.Ed. 562, 51 S. Ct. 306, by a divided court of five to four, it was held that a state may not impose an inheritance tax upon the entry into possession and enjoyment of property conveyed in trust prior to the effective date of the taxing statute, where the donors reserved the income for life but no reversionary interest and the trust was irrevocable, and the donees were entitled to possession and enjoyment of the property conveyed on the death of the donors, which occurred after the effective date of the taxing statute. The court based its opinion on the fact of vesting in right, as in May v. Heiner, and pointed out that prior to the execution of the declaration of trust no statute was in effect under which a succession tax could have been levied upon the transfer. The court held that the imposition of the tax violated both the contract clause and the due process clause of the Federal Constitution. If the doctrine of this case, which is the same as that in May v. Heiner, has not been departed from in Helvering v. Hallock, above, and the other late cases, it would support the contention of the appellant if the transfer in the instant case was not subject to the tax imposed by the law in effect in 1930.

We are of the opinion, however, that if Bass had died while section 12469, O.S. 1931, was the governing statute, the transfer would have been taxable under that law. See the state authorities above cited, and the more recent decisions of the United States Supreme Court, such as Helvering v. Hallock, 309 U.S. 106, 84 L. Ed. 604, and Fidelity-Philadelphia Trust Co. v. Rothensies,

20

324 U.S. 108, 89 L.Ed. 782. We agree with the contention of the Tax Commission that the Legislature, by the 1933 and subsequent acts, placed a legislative construction upon the prior law that it was intended to cover such transfers as the one here involved and to adopt the construction placed upon similar statutes by the other state courts, rather than the rule followed in May v. Heiner. There is a division of opinion as to whether May v. Heiner was not departed from in Helvering v. Hallock and the subsequent decisions. See Paul's work on Estate and Gift Taxation, vol. 1, page 333, and Helvering v. Proctor, 140 F. 2d 87, 155 A.L.R. 845. It seems clear that if the transfer was taxable under the law in effect in 1930, that law could have been amended so as to increase the inheritance or succession tax after the transfer of the legal title but prior to the death of the grantor. Milliken v. United States, 283 U.S. 15, 75 L.Ed. 809. And if the rate of the existing inheritance tax could have been so increased, we see no reason why a more burdensome **estate** tax could not be substituted for the **inheritance** tax, since death is the operative event in both instances and the burden of both taxes ultimately falls upon the same persons. Under the inheritance or succession tax law in effect in 1930, it was the duty of the personal representative to pay the tax levied upon each beneficiary's distributive share **after** the share was determined and deduct the same from his or her share, while under the 1935 estate tax law it was the duty of the personal representative to pay the tax upon the whole net estate and deduct it before the distributive share was determined. The Legislature has the power to change schemes and rates of taxation from time to time, and no citizen has a vested interest in any such scheme. Thompson Building Co. v. Oklahoma Tax Commission, 192 Okla. 1, 132 P. 2d 962; Essley v. Oklahoma Tax Commission, 196 Okla. 473, 168 P. 2d 111.

These views are consistent with the decisions of the United States Supreme Court in Tyler v. United States, 281 U.S. 497, 74 L.Ed. 991, 50 S.Ct. 356, 69 A.L.R. 758, holding valid an Act of Congress imposing an estate tax upon estates by entireties, upon the death of one of the spouses, where the estate came into being before the act was passed, and where neither spouse could dispose of the property without the consent of the other. 26 Am.Jur. 803. The court there said:

"Taxation, as it many times has been said, is eminently practical, and a practical mind, considering results, would have some difficulty in accepting the conclusion that the death of one of the tenants in each of these cases did not have the effect of passing to the survivor substantial rights, in respect of the property, theretofore never enjoyed by such survivor. Before the death of the husband (to take the Tyler Case, No. 428) the wife had the right to possess and use the whole property, but so, also, had her husband; she could not dispose of the property except with her husband's concurrence; but her rights were hedged about at all points by the equal rights of her husband. At his death, however, and because of it, she, for the first time, became entitled to exclusive possession, use and enjoyment; she ceased to hold the property subject to qualifications imposed by the law relating to tenancy by the entirety, and became entitled to hold and enjoy it absolutely as her own; and then, and then only, she acquired the power, not theretofore possessed, of disposing of the property by an exercise of her sole will. Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other."

These views are also consistent with the decision of the United States Supreme Court holding that an act imposing an inheritance tax upon the rights of the wife in community property where the marriage occurred before the passage of the taxing statute does not violate the contract clause or the equal protection clause of the Federal Constitution (Moffitt v. Kelly, 218 U.S. 400, 54 L.Ed. 1086, 31 S.Ct. 79,

30 L.R.A., N.S., 1179), and the decision holding valid a statute imposing a Federal estate tax on the interest of the surviving tenant as to property held in joint tenancy, where the joint tenancy was created prior to, but death occurred after, the passage of the statute (Gwinn v. Commissioner of Internal Revenue, 287 U.S. 224, 77 L.Ed. 270, 53 S.Ct. 157), and a similar holding that the imposition of estate taxes on the whole estate in property held in joint tenancy does not violate the due process clause (United States v. Jacobs, 306 U.S. 363, 83 L.Ed. 763, 59 S.Ct. 551). These cases are based upon the fact that by the death of the spouse or joint tenant the survivor acquired new or additional rights—the right of sole ownership, possession and the right to sell the entire property—and that the shifting of these benefits was a proper subject of an excise tax. So, here, the shifting of the right to the income by the death of Bass was a proper subject of an estate tax as a substitute for the existing inheritance tax. As was said in United States v. Jacobs, above:

"The tax does not operate retroactively merely because some of the facts or conditions upon which its application depends came into being prior to the enactment of the tax."

As pointed out above, the statute does not purport to levy the tax upon the transfer of the bare legal title in 1930, but rather upon the transfer of the beneficial use in 1938 by the death of Bass, which occurred after its enactment.

Bass could have avoided the estate tax after the 1935 Act was passed and prior to his death by transfer of the income to his children if he had chosen to do so, just as either of the tenants in United States v. Jacobs could have terminated the joint tenancy during his or her lifetime and thereby have avoided the estate tax.

We conclude that the imposition of the estate tax under the 1935 Act in lieu of the inheritance tax in effect when the trust was created does not violate the contract clause, the equal protection clause, or the due process clause of either the State or Federal Constitution.

Order affirmed.

RILEY, CORN, ARNOLD, and LUTTRELL, JJ., concur. DAVISON, V.C.J., and BAYLESS, WELCH, and GIBSON, JJ., dissent.