## Hackett Estate

608

*Charles J. Peischl, Bruce L. Castor,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Catherine R. Barone,* Assistant Attorney General, for Commonwealth.

TAXIS, P. J., February 16, 1974.—This appeal has been filed by the executor* of the above-captioned estate. The tax in issue has been assessed upon the corpus of an intervivos trust created by decedent in 1914, which terminates at her death.

Decedent died on May 27, 1971, at the age of 82 years. On April 30, 1914, before her marriage, decedent (nee Holden) created a deed of trust naming the Fidelity Trust Company as trustee. She reserved to herself the right to the net income for her life, and also the right to withdraw up to $5,000 from the principal, which right was exercised in full in 1935. The trust was otherwise irrevocable and unchangeable, by specific provision in the deed. At decedent's death, the principal passes to her only child, Frances H. Dittman. The deed contained gifts over in case decedent was not survived by children or issue of deceased children, in which circumstance the income and principal were given to decedent's two named cousins and their children; in default of these, there were further gifts over to the descendants of decedent's grandmother, Sarah Lombaert, and if none of those were in existence, settlor had the power to appoint the trust principal by her will.

---

* The executor is a proper party, since decedent's will contains a tax clause imposing all of the taxes imposed at her death upon her residuary estate.

Decedent married in 1916, and her only child was born on September 18, 1917. At the execution of the trust deed, the cousins who were the named alternative remaindermen were both younger than decedent. One was married with one child, the other was unmarried. The three descendants of decedent's grandmother who now can be identified, were all substantially older than decedent. Therefore, when the deed was executed, settlor could not have known who her children would be or how many there would be, if any, although the lines of the alternative takers were fairly well ascertained.

In schedule "C" of the inheritance tax affidavit filed, the executor disclosed the existence of the inter vivos trust in question and the value of its assets at decedent's death, which was $198,586.30. However, these assets were not included in the taxable estate, and the return contained the following explanatory language, which also summarizes the basis of the present appeal:

"On April 30, 1914, decedent created an irrevocable trust in which she divested herself of all control over, ownership of, and interest in the corpus of the trust, except for a retained right to receive net income for life.

"On her death, the corpus passed, according to the terms of the trust, to her daughter, Frances H. Dittman. Notwithstanding the provisions of Section 224 of the Inheritance and Estate Tax Act of 1961, the interest is not taxable by reason of the decedent's death. At the time of the creation of the remainder interest there was no tax on transfers of lineal descendants. Under the due process clause of the Pa. and U. S. Constitutions, the transfer by the decedent may not be taxed retroactively. Coolidge vs. Long, 282 U. S. 582 (1930)."

The Commonwealth nevertheless appraised the trust assets as returned, and assessed a six percent inheritance tax thereon. This appeal followed.

The tax has been imposed under the alleged authority of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 PS §2485-101, et seq., relating to the taxation of certain types of inter vivos transfers. Section 103 thereof specifies the effective date of the act as January 1, 1962, and further that it applies to "(2) Inter vivos transfers made by decedents dying on or after that day regardless of the date of the transfer." The particular inter vivos transfers which are taxable are described in the following statutory provisions, among others:

Section 221(a):

"All transfers of property, specified in sections 222-226, which are made during his lifetime by a resident or a non-resident, to the extent that they are made without valuable and adequate consideration in money or money's worth at the time of transfer, are subject to tax under this act."

Section 223:

"A transfer conforming to section 221(a), (1) which takes effect in possession or enjoyment at or after the death of the transferor, and (2) under which the transferor has retained a reversionary interest in the property, the value of which interest immediately before the death of the transferor exceeds five (5) percent of the value of the property transferred, is subject to tax under this act."

And, section 224:

"A transfer conforming to section 221(a), and under which the transferor expressly or impliedly reserves for his life or any period which does not in fact end before his death, (1) the possession or enjoyment of, or the right to the income from, the property transferred, . . . is subject to tax under this act."

Sections 222, 225 and 226 have no application to the present case.

Section 223 is quoted because of its mention in appellant's brief, but it is evident that the Commonwealth is not seeking to utilize it as a basis for taxing this trust. The "reversionary interest" which decedent had immediately before her death was virtually nonexistent, certainly not nearly five percent, since at that time, decedent had a daughter only 54 years of age and four grandchildren. Further, before her retained testamentary power of appointment could have been effective, the issue of two cousins younger than decedent, as well as her grandmother's descendants, would have had to be exhausted. With respect to taxability under section 224, however, a more difficult problem is presented.

The Commonwealth seeks to apply section 224 of the 1961 Act, supra, to the distribution or transfer of trust assets to decedent's daughter now occurring under the terms of the trust deed. It is first worthy of note that, although the present statutory provisions are more detailed than the corresponding provisions of prior acts, transfers which were "intended to take effect in possession or enjoyment after the death of the grantor," have long been regarded as taxable events. Such language was included in the Commonwealth's original Inheritance Tax Act of April 3, 1826, P. L. 126, and was repeated in 1887, P. L. 79 and 1917, P. L. 832. The present language is derived from section 1(c) of the Act of June 20, 1919, P. L. 521, which, while not specifically referring to transfers with a retained life estate, has been construed as applicable to such transfers, among other types of transfers with delayed enjoyment, by judicial decision. See Cooper Estate, 320 Pa. 418 (1936), and Hermann Estate, 349 Pa. 230 (1944).

In Glosser Trust, 355 Pa. 210 (1946), the late justice Horace Stern (later Chief Justice) discussed the tax-

ability of transfers of property involving retained life estates in some detail, and it is clear from his opinion that the broad statutory language taxing transfers intended to take effect at or after death included such transfers, among many others. At page 215, we find the following language:

"It is clear, from a long line of authorities, that, even though the property has been delivered to a trustee and vested remainders given to the beneficiaries, if the donor himself continues as beneficiary until his death, as by reserving a right to the income during his life, the interest of the remaindermen does not take effect until the donor's death and is, therefore, subject to the transfer inheritance tax. But, if there is no such reservation, if the donor has not retained any power of revocation or amendment whereby he may reassert dominion over the property, if he had divested himself absolutely of all title to the property at the time of the execution of the trust instrument, the transfer is a perfected gift intervivos and, therefore, not subject to the tax: . . . The criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime."

In an accompanying footnote, several decisions of the Supreme Court of Pennsylvania were referred to in support of this proposition.

There is, consequently, no ambiguity in the meaning of the relevant provisions of the Inheritance Tax Act, nor do we understand appellant to contend that there is. Undoubtedly, the language of sections 103 and 224 encompasses and applies to the events which have occurred in this estate, if literally applied. In addition, as a general proposition, there is no doubt of the constitutionality of taxing such a transfer, so long as the

circumstances of a particular case do not cause it to run afoul of any specific constitutional standard. Appellant claims that this is such a case, and that regardless of the literal applicability of the statutory language, applying it to the facts of Hackett Estate would violate constitutional prohibitions. We agree.

Appellant argues that the transfer in this case occurred in 1914 at the execution of the irrevocable deed of trust by decedent and her trustee. He further contends that this transfer constituted a completed inter vivos gift and that, since it was free of inheritance tax at the time (no tax on transfers to direct descendants being imposed by the act in effect in 1914), the application of the provisions of the 1961 Act to this transfer would be forbidden retroactive taxation. The Commonwealth counters, however, with the argument that the "transfer" in question did not, in fact, occur until the death of decedent in 1971 according to the law applicable then, and that there is, therefore, no retroactive taxation.

There is agreement on the general proposition that a statute imposing a death tax on property transferred absolutely and irrevocably prior to its passage would violate fundamental constitutional guarantees in the due process clause. In Nichols v. Coolidge, 274 U. S. 531, 542 (1927), the Supreme Court of the United States said:

"This court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment . . . in so-far as [the statute] requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation."

Appellant relies chiefly here upon Coolidge v. Long, 282 U. S. 582 (1931). In that case, a husband and wife created an irrovocable trust in July 1907, about five weeks before the first Massachusetts inheritance tax on interest passing to lineal descendants became effective. In the trust deed, the settlors reserved the right to the income for their lives and gave the remainders to their sons. The settlors also relinquished all power to revoke, control or modify the trust. They retained no interests which passed from them at their deaths or because of their deaths. The Supreme Court of the United States ruled that the imposition of a death tax on the remainder interests at the death of life tenants violated the impairment of contract and due process clauses of the Constitution of the United States.

The significant factual parallels between the present case and Coolidge v. Long, supra, are clear. The fact that Mrs. Hackett had no offspring in esse at the time of the execution of the deed in 1914, while the settlors in Coolidge v. Long, supra, did, cannot affect the constitutional considerations because the criterion is whether the donor completely and irrevocably parts with all of his interests in the property before the enactment of the tax, and not whether the remaindermen take or do not take before that time. Settlor might never have had offspring; but when she did, their rights in the trust were instantly established by the terms of the deed, and nothing that Mrs. Hackett could have done after execution of the deed would have diminished such rights.

The Commonwealth responds to this view with arguments based not so much on basic constitutional principles as on allegations of a later and more modern and practical definition of when the "transfer" actually occurs in the case of a retained life estate in the settlor. It first contends that since the Commonwealth has

a right to control inheritance absolutely, as has, in fact, often been said by the courts, imposition of death taxes which simply increases the degree of participation by the Commonwealth in the distribution of a decedent's property cannot be constitutionally defective. But the issue here is when and how the alleged privilege of inheritance ripens into a constitutionally protected *right* of ownership; the crux of the present case, it may be said, is whether there was actually any "inheritance" of the remainder interest at decedent's death at all.

The more substantial argument by the Commonwealth is that later decisions have altered the concept of a "transfer" so as to change the emphasis from the creation of vested or absolute interests, and place it upon the time when "economic benefit" is obtained by the remaindermen. No doubt if it could be found that this was the rule to be applied, and that such a rule was constitutionally valid, it would follow that a transfer occurred in this estate in 1971 at decedent's death, because the remaindermen received the economic benefit of this trust only at that time. For certain purposes, this concept of a transfer may be acceptable, but we cannot read the cases cited by the Commonwealth as establishing such a proposition in the present context, especially in the face of persuasive contrary authority.

The first case to be considered is Jewell's Estate, 235 Pa. 119 (1912). There, decedent died in 1876, and the issue was whether the tax on the remainder interest should be governed in amount and terms of payment by the act in effect at death or the Act of 1887, which was enacted before the remaindermen came into possession. It was held that the later act applied, but the case did not involve any issue concerning whether or not a taxable event had occurred earlier,

nor were any constitutional problems discussed or decided. The transfer was to collaterals, and some tax was due whether the 1887 Act or the prior act applied, so that the case is of no help here.

In Cochrane's Estate., 342 Pa. 108 (1941), the issue was the taxability of joint bank accounts under the Act of July 14, 1936, P. L. 44, which specified the means of computing the taxable portion thereof when one joint tenant died, providing that such shares or portion should be determined by dividing the balance in the account by the number of joint tenants. The Supreme Court held that this did not violate the uniformity clause in the Constitution of Pennsylvania, because the equitable rights of each tenant in the fund are the same regardless of the amount deposited by each. The Commonwealth seeks to relate this decision to the present problem on the grounds that the bank accounts involved in Cochrane's Estate, supra, were created prior to the enactment of the 1936 Act. From the opinion, we cannot be sure that this is so, since dates are not fully supplied; but even if it is so, all that the case stands for is that in joint account cases, the final and complete transfer of a joint tenant's interest therein occurs at his death, which rule is not at all inconsistent with the cases relied on by appellant.

The Commonwealth next cites Todd Trust, 358 Pa. 530 (1948), in support of its position that a "transfer," as presently defined, occurs when the economic benefit of the property is received by the transferees, rather than when their interests vest in any technical sense. The settlor in Todd Trust, supra, executed an inter vios trust agreement in 1932, inter alia, retaining the right to revoke the trust at anytime during his life. Possessing this power, settlor modified the trust twice during his life. When he died, in 1945, the Commonwealth sought to tax the remainder of the trust as a transfer

taking effect in possession or enjoyment at death. In determining that the remainder interest was taxable, the Supreme Court found that the reservation of the income for life by settlor was sufficient to postpone possession and enjoyment of the remainder interest until his death. Not extensively discussed, but mentioned, was the obvious additional consideration that the settlor also retained a power of complete revocation. The court also discussed the rule, to which we have earlier referred, set forth in Glosser Trust, supra, that the critical factor is not when or whether particular beneficiaries acquire actual possession or enjoyment but whether settlor made a complete and irrevocable gift of all of his interest in the property during his lifetime. The problem of retroactive taxation was not present, since the Act of 1919 was the operative statute when the deed was executed in 1932 and when the settlor died in 1945. The case, therefore, does not directly deal with the main issue in the present case, and any indirect authority which it provides, because of its reiteration of the rules of Glosser Trust, supra, gives more comfort to appellant than to the Commonwealth.

The Commonwealth concedes that there are a number of Pennsylvania cases which hold that the Act of 1919 applies only to transfers occurring subsequent to its enactment and not to transfers completed prior thereto. In Oliver's Estate, 273 Pa. 400 (1922), decedent gave certain securities away absolutely in 1918, and died in July of 1919. The 1919 act became effective in June of that year, and for the first time taxed gifts made in contemplation of death. The court held that whether or not the gifts were taxable under the Act of 1919, that act could not apply because the transfer was fully accomplished prior to its effective date. In Denniston's Estate, 325 Pa. 453 (1937), application

of the same rule produced the opposite result as to taxability. The settlor had created a trust in 1915 for herself for life, with the remainder to pass by exercise of a testamentary power of appointment by her or, in default of same, to her children. There was no tax on the transfer of property to lineals in 1915. Settlor relinquished her testamentary power in 1932, after the Act of 1919 had imposed such a tax. Holding, again, that the criterion is when the donor absolutely parts with all dominion over or right to control the property, the court ruled that the transfer had not been completed until the power of appointment was relinquished in 1932. The court said, page 455: "Unquestionably if the settlor had not retained the power of appointment, the corpus would not be taxable as the transfer would have been complete at the date of the deed." See also Leffmann's Estate, 312 Pa. 236 (1933).

The Commonwealth also cites, but questions the correctness of, Houston's Estate, 276 Pa. 330 (1923). In that case, settlor created an irrevocable trust in 1918, retaining the income for herself for life, remainder thereafter to collaterals. Settlors died in 1921, after the rate of tax to collaterals had been increased from five to ten percent. Specifically holding that the basis for tax was transfer of rights of ownership by the donor and not enjoyment by the beneficiaries, the tax was imposed at the lower rate. It may be that the authority of Houston is diminished at the present time with respect to the right to change tax rates, and apply the new rates to interests which arose before the change in rate. However, the case did not turn on constitutional issues, and in ruling that the transfer by the donor was complete when she parted with her title to and right to control the trust property, it is in harmony with the other cases.

It, therefore, appears that the rulings of the Supreme Court of the United States and the application of the

various Pennsylvania tax statutes by our State courts are in substantial harmony, from a constitutional standpoint. This conclusion is reinforced by reference to the principal text on the principal Pennsylvania inheritance tax, Grossman and Smith, §103-2, where this issue is treated. After initial reference to Coolidge v. Long, supra, it is demonstrated that, while the basic rule may have some limitations in particular areas, Pennsylvania decisions have been consistent in refusing to apply after-enacted statutes to prior completed transfers. Partial, conditional or incomplete transfers are within the Act of 1961 not only because of its specific provisions, but have always been regarded as taxable under the prior statutes, because a substantial interest in, or power over, the corpus was kept by the settlor. It is also shown in the same discussion that at least, Connecticut, Massachusetts, New York and Minnesota follow the same rule, while only in Oklahoma what may be a contrary result was reached: Bass' Estate, 200 Okla. 14, 190 P. 2d 800 (1947). However, even there an alternative ground for the court's decision appears, which was that the transfer was taxable in any event under the tax law in effect when it was made. Obviously, the weight of authority supports appellant's position. The textwriter concludes: "It would not appear that the force of Coolidge v. Long has been weakened, however, and its rule would still appear applicable to non-community and non-joint property."

There is, in all of this, an element of fairness to be observed. It is what the due process clause and the rules and decisions under it are all about. It is why statutes of all types, not just tax acts, are presumed to operate prospectively only, unless retroactivity is obviously intended by the legislature: Statutory Construction Act of May 28, 1937 P. L. 1019, sec. 56, 46 PS §556. Further, even if we are not dealing here with the application of a statute retroactively, but the application

of a new concept or definition of "transfer" retroactively, such would be open to the same constitutional objections of unfairness and capriciousness. It is common for statutes, for example, the Act of 1961, to have an effective date subsequent to the date of actual enactment. This permits persons to adjust themselves and their individual and property interests in the light of the new law.

The comments to article II, part C, of the 1961 Act, dealing with inter vivos transfers, indicate that, except for certain small details, the statutory rules relating to inter vivos transfers were restated for clarification and not to alter existing law in any substantive sense. The individual sections in part C were all either suggested by the prior act or the case law thereunder, so that cases under the Act of 1919 remain the law. For these reasons, we find no basis for the retroactive application of the Act of 1961 to transfer which were completed and absolute under the law applicable when they were made, even though such transfers might later be taxable, under the provisions of a different law.

And now, February 16, 1974, the appeal is sustained and the assessment of transfer inheritance tax upon the 1914 inter vivos trust created by decedent is stricken.