**ROGERS**

v.

**OKLAHOMA TAX COMMISSION.**

No. 34951.

Supreme Court of Oklahoma.

Nov. 5, 1952.

Rehearing Denied Dec. 6, 1952.

Application for Leave to File Second Petition for Rehearing Denied Jan. 6, 1953.

410

K. W. Shartel, Joseph G. Rucks, both of Oklahoma City (Richardson, Shartel & Cochran, of Oklahoma City, of counsel), for plaintiff in error.

R. F. Barry, of Oklahoma City, for defendant in error.

GIBSON, Justice.

Plaintiff in error is executrix of the estate of Charles Leslie Fain, deceased, and in this opinion we shall refer to her as "Executrix", and to defendant in error as "Commission".

Charles Leslie Fain died, testate, February 4, 1944. On May 5, 1945, Executrix filed with the Commission an estate tax return showing a total tax liability of $23,-206.37, and paid said amount. Following its audit of the estate's affairs the Commission assessed the estate taxes in the sum of $29,920.23, with a penalty of $278.55, and the additional tax was paid by Executrix. The increase in the tax assessed re-

sulted from the act of the Commission in including as a taxable portion of the estate the proceeds of two life insurance policies on the life of deceased in the total sum of $50,000, which Executrix had not included in her return. There was also an adjustment of other items set forth in the order. Executrix filed her claim for refund of taxes paid, which claim was predicated upon the propositions that the value of the insurance contracts of $50,000 was not subject to an estate tax and that the Commission had failed to deduct certain funeral expenses and Oklahoma income taxes paid. Following a hearing the Commission entered its order making findings of fact and denying the claim, in toto. Executrix appeals.

The case was tried and submitted on written stipulations of facts signed by the parties.

There is an extended discussion in the briefs with reference to an alleged agreement between an attorney for Executrix and an agent of the Commission who conducted the investigation of the value of the properties of the estate to be considered in measuring the estate tax. Following the investigation a conference was had in the attorney's office. The Commission's agent understood that an agreement was reached that certain stock would be given a lesser valuation than he had placed on it and that Executrix would then accede that the value of the insurance contracts would be included in the measure of the estate tax. The estate's witnesses denied that such agreement was reached with reference to the insurance policies. Executrix was not present at the conference and it is not shown that she knew anything about the agreement prior to the Commission's order.

In its order the Commission specifically found that a meeting of the minds was not reached and had at the conference. Nevertheless the order contains the following:

"The Commission further finds that following the conference referred to in the foregoing paragraphs the Commission formally assessed estate tax in accordance with the agreement that M. P. Boydston claimed to have with Kent Shartel, and that by failing to protest the assessment and by paying the amount of additional estate taxes as reflected by the assessment, ($6,982.41), the executrix and the estate did accept and ratify the understanding that the Commission thought had been reached at the conference hereinbefore referred to."

In this the Commission erred. There could be no ratification of an alleged agreement when, in fact and in law, no such agreement was had. When the Commission found that there was no meeting of the minds of the parties there was no agreement to ratify.

In its order denying the claim of Executrix for refund the Commission found that there was a total failure to protest the assessment made by the Commission and that as a matter of law the assessment became final within thirty days from the mailing of the same to the estate's attorney, and that the order having become final it serves as a bar under the rule of estoppel and res judicata.

Tit. 68 O.S.1951 § 989m, Inheritance and Transfer Tax Act of 1939, provides for the return by executor upon forms of the Commission; for audit by Commission and computation of an order assessing the tax upon decedent's estate, and for notice of Commission's action to be given to executor. It is further provided that if any interested party is dissatisfied with such assessment they shall, within thirty days from the date of mailing of such notice, file with the Commission their objections in writing, and the Commission may grant a hearing. There was no provision for appeal in that act. Commission now says that under the statute the Executrix had thirty days and no longer within which to protest its order, and since no protest was filed the order has become a final adjudication.

Tit. 68 O.S.1951 § 1474, State Uniform Tax Procedure Act, 1939, provides for appeal directly to the Supreme Court from any order of the Commission, if the taxpayer is aggrieved by the order. It further provides as a condition precedent to the right to prosecute such appeal that the taxpayer shall pay the tax assessed. Both acts

were approved on the same date, April 10, 1939.

The Commission now contends that having wholly failed to protest its order assessing the tax the Executrix cannot attack the validity of the order and that she has lost her right to pursue her remedy by appeal which would otherwise have been allowed under the statute.

To these contentions Executrix says that she has proceeded under an entirely different statute than those above mentioned and has filed a claim for a refund of taxes under Tit. 68 O.S.1951 §§ 13.1 to 13.7, passed in 1943.

■ She further says that said statute provides a remedy for taxpayers totally separate from the remedies provided in sections 989m and 1474, supra, and that a failure of a taxpayer to pursue the remedies offered in the latter sections does not affect the right of the taxpayer to pursue the remedy granted under sections 13.1–13.7, supra.

■ With this contention we agree. This appeal was not taken from the Commission's order assessing the tax. That tax was paid without protest. The appeal is from the order denying the claim for refund of the overpayment made through error of fact or computation or mistake of law.

There is no conflict between the first mentioned statutes and sections 13.1–13.7 of the 1943 Act. We believe that in the latter Act the Legislature intended to grant an additional remedy to one who paid the assessed tax to the Commission, if such payment was made under the conditions set forth in that statute. Clearly the Legislature was dealing with taxes collected by the Commission, since the Commission is mentioned twice in the title of the Act and three times in sec. 13.2, which reads as follows:

"Any taxpayer who has so paid any such tax to the State of Oklahoma through error of fact or computation, or mistake of law, may, within one (1) year from the date of payment thereof, file with the Oklahoma Tax Commission a verified claim for refund of such

tax so erroneously paid. Said claim so filed with the Oklahoma Tax Commission shall specify the name of the taxpayer, the time when and period for which said tax was paid, the nature and kind of tax so paid, the amount of the tax which said taxpayer claimed was erroneously paid, the grounds upon which a refund is sought, and such other information or data relative to such payment as may be necessary to an adjustment thereof by the Oklahoma Tax Commission. It shall be the duty of the Commission to determine what amount of refund, if any, is due as soon as practicable after such claim has been filed and advise the taxpayer about the correctness of his claim."

That the Legislature intended that the refund act should apply to taxes assessed by and paid to the Commission is further emphasized by the exception in sec. 13.5, which reads:

"The provisions of this Act shall not apply to refunds of taxes erroneously paid under the State Income Tax Law and payable out of the 'Income Tax Adjustment Fund' as now provided in the State Income Tax Act."

■ We say that there is no conflict between the statutes under discussion. To say otherwise might subject the earlier statutes to the contention that they were repealed by the 1943 Act. This is not true. Sec. 989m of the Inheritance and Transfer Tax Act and Sec. 1474 of the Uniform Procedure Act provide for the assessment and collection of the specified taxes. Secs. 13.1 to 13.7 of the 1943 Act provide for the refund of taxes paid through mistake of law or fact.

■ In Creger v. Brooks, 89 Okl. 127, 213 P. 547, 549, we said:

"In the construction of statutes, harmony, not confusion, is to be sought. The true rule has often been said to be that, where two acts or parts of acts are reasonably susceptible of a construction that will give effect to both and to the words of each, without violence to either, it should be adopted in preference to one which, though rea-

sonable, leads to the conclusion that there is a conflict. There is no conflict between different provisions of a statute if there is a reasonable meaning of the words used, considering the manner of their use, which will bring them into harmony. Sackett v. Rose, 55 Okl. 398, 154 P. 1177, L.R.A.1916D, 820; Town of Comanche v. Ferguson, 67 Okl. 101, 169 P. 1075."

█ We hold that the refund statute gives one who has erroneously paid a tax, within the limitations of the statute, an additional method of having his claim considered and that the provisions of the tax laws, relating to the assessment and collection of the tax and allowing an appeal from the Commission's order of assessment, is not an exclusive method of obtaining relief. Yazoo & M. V. R. Co. v. Conner, etc., 188 Miss. 352, 194 So. 915. We further hold that the Commission order fixing the amount of the tax and assessing the same was not res judicata as to the amount of the tax legally assessable, so as to preclude a review of the question of erroneous overpayment, exacted through mistake, which review is permitted under the refund act. Boe v. Steele County, 74 N.D. 58, 19 N.W. 2d 921, 925. As was said by the North Dakota court:

"* * * The provisions of the statute relating to a refund for an overpayment come into operation only after payment has been made. The statute presupposes not only that an assessment has been made, but also that the assessment has been paid and that the amount paid is in excess of that which under the law is legally due for taxes."

We come now to the most difficult controversy in this case, presented by the third proposition of the Executrix, as follows:

"The value of a life insurance contract which provides that insured has no legal incidents of ownership in the policy and that all the rights, benefits, options and elections are vested solely in one of the beneficiaries, and her legal representatives is not part of the taxable portion of insured's estate under the estate tax laws of the State of Oklahoma."

█ An inheritance and transfer tax is a legal imposition, and liability for payment thereof must be found in the statute or it does not exist.

"The rule applied in Oklahoma that all property is subject to taxation does not apply to inheritance or transfer tax. Such a tax is a creature of the Legislature and a statute providing for such a tax is the only authority therefor."

In re Jones' Estate, 147 Okl. 123, 294 P. 792, 793.

█ It is the general rule that, in the absence of a statute to the contrary, the proceeds of a life insurance policy, payable to a specific beneficiary and not to the insured or to his estate, are not subject to estate or transfer tax upon the death of the insured for the reason that the proceeds of the policy pass by virtue of the contract of insurance and not by will of the insured or the intestate laws of the State. The rights of the named beneficiary arise at the time the contract is made and not upon the death of the insured. The date of death is the time fixed when the insurer becomes obligated to pay. In re Knight's Estate, 31 Wash.2d 813, 199 P.2d 89; In re Black's Estate, 74 N.D. 446, 23 N.W.2d 35; In re Killien's Estate, 178 Wash. 335, 35 P.2d 11; In re Wilson's Estate, 363 Pa. 546, 70 A.2d 354; Welch v. Commissioner of Corporations and Taxation, 309 Mass. 293, 34 N.E. 2d 611.

If statutory authority exists in Oklahoma for the assessment and collection of the tax on the policies involved herein it must be found in Tit. 68 O.S.1951 § 989e, which reads:

"The value of the gross estate, used as a basis for a determination of the value of the net estate, shall be determined by including:

*    *    *    *    *    *

"(6) To the extent of the excess over Twenty Thousand Dollars ($20,000.00) of the amount receivable directly, in trust, or as annuities, by all other

beneficiaries, or under a joint policy by the survivor, of the proceeds of life insurance, by virtue of policies taken out by the decedent upon his own life and in which, at the time of death, the decedent had the right, directly or indirectly, to change the beneficiary or to convert the policy to his own use."

It is under this section of the statute that the Commission asserts its authority to tax the policies. If the Commission's authority cannot be sustained under the quoted statute it follows that the proceeds of the policies were erroneously included in the amount of the gross estate and in the computation of the tax. The agreed value of the two policies was $50,000. The beneficiary was deceased's wife, the Executrix here, in one policy, and decedent's children in the other policy.

A typewritten rider attached to each printed policy contains the following provision:

"All rights, privileges, benefits, options and elections granted to or conferred upon the insured by said policy are hereby vested solely in the said wife, or her legal representatives, it being intended that the insured shall have no legal incidents of ownership in said policy."

With reference to this provision of the contract we concur with the following observations of counsel for Executrix:

"This clause was included in the original contracts entered into with the company and clearly precludes decedent of all control directly or indirectly over the policies, and particularly of any power or right to change the beneficiary or convert the policies to his own use. At no time under said contracts of insurance did decedent ever have the right or power to change beneficiaries, to surrender or cancel the policies, to assign the policies, to pledge or borrow against the cash surrender value, nor could he alter the manner of payment or in any respect convert the policies to his own use. All such rights and powers were vested in the decedent's wife and her legal repre-sentatives and under no circumstances could these rights and powers revert to decedent, his heirs or representatives and the Commission erred in so holding."

If liability for payment of an inheritance tax must be found in the statute, In re Jones' Estate, supra, we cannot find authority for the assessment of such tax in sec. 989e(6), supra. Under that action the proceeds of the policies were erroneously included in the estate assets, for tax assessment, unless the decedent had the right, directly or indirectly, to change the beneficiary or that he retained a right to convert the policy to his own use. Under the above quoted provision of the policy all such rights were vested in another than the insured from the time that the policy was issued.

In a case recently decided by this court Davis' Estate v. Oklahoma Tax Commission, Okl.Sup., 246 P.2d 318, although our decision involved, primarily, the construction of the Community Property Act, as applied to life insurance policies, we nevertheless upheld the tax upon such of the proceeds of life insurance policies as were found not to be the property of the surviving spouse. Our decision in upholding the tax in that case was based, primarily, upon the fact that the insured reserved the right to change beneficiary and therefore the assessment of the tax was squarely within the provisions of sec. 989e(6), supra. No such reserved right appears in the instant case, and our decision here is not in conflict with the Davis case.

Commission calls our attention to other provisions of the attached riders specifying the mode of settlement under each policy.

The beneficiaries of the $10,000 policy are decedent's two children, to be paid in monthly instalments under option "A" of the policy, with the proviso that the share of either child if not living at the time the policy matured as a death claim was to be paid to the wife, if living. If neither the children nor the wife were living the proceeds were to be paid "in one sum to the executors or administrators of such last deceased child."

The beneficiary of the $40,000 policy is decedent's wife. If the contract matures as a death claim 1/8 of the proceeds is to be paid monthly under option "C" and 7/8 under option "A". Such payments are to be to the wife, if living, and she was given the right to elect settlement in accord with other specified options. This policy contained the following recital: "Upon the death of the survivor of the insured and the said wife, any amount then payable under the terms of the policy shall be paid in one sum to the executors or administrators of such survivor."

Commission argues that since it is possible for decedent's personal representatives to become beneficiary, he, in the event of such a contingency, would have the right to change beneficiary. It is said that the statute provides that if insured has the indirect right to exercise rights of ownership, the proceeds are taxable and that it covers contracts providing for a possibility of reversion of title.

It is true that if all beneficiaries named in a policy should predecease the insured and that the policy made no further provision as to beneficiaries, it would remain that none but the insured would have a property interest in the policy. Its proceeds would then be taxable under the provisions of sec. 989e(5) of the Act. But both policies contained the provision first above quoted vesting all rights, privileges and benefits in the wife or her legal representatives and divesting the insured of all incidents of ownership. As we view the Oklahoma statute the proceeds of these policies cannot be included in the gross estate of decedent unless the event of the deaths of all of the beneficiaries shall have occurred prior to the death of the insured, so that the right to change beneficiary, directly or indirectly, actually existed at the time of his death. The statute provides for taxation of the proceeds of life insurance policies taken out by decedent, "and in which, at the time of his death", he had the right to change beneficiary, etc. Under the policies herein no such right was vested in him at the time of his death.

In support of its contentions on this proposition Commission cites various Federal decisions construing Federal statutes. There are clear distinctions between the statutes of the two sovereigns, and a discussion of the Federal cases would unduly extend this opinion. The cited Federal cases are of little value in deciding the questions here presented.

The claim for refund should have been allowed as to the tax assessed on the involved insurance policies.

The order of the Tax Commission is vacated and the cause remanded for further proceedings not inconsistent with this opinion.

WELCH, DAVISON, JOHNSON and O'NEAL, JJ., concur.

HALLEY, V. C. J., and CORN and BINGAMAN, JJ., dissent.