**OKLAHOMA TAX COMMISSION,**
Plaintiff in Error,

v.

Jean S. HARRIS, Individually and as Administratrix of the Estate of Ray Milton Balyeat, Deceased, Defendant in Error.

No. 42598.

Supreme Court of Oklahoma.

May 20, 1969.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Mike Tapp, E. B. Lee, Oklahoma Tax Commission, Oklahoma City, for plaintiff in error.

Edward E. Soule, Lytle, Soule & Emery, Oklahoma City, for defendant in error.

LAVENDER, Justice.

This appeal by the Oklahoma Tax Commission (Commission) involves whether the proceeds of four policies of insurance upon the life of Ray Milton Balyeat are to be included in the value of his gross estate for the purpose of determining and computing the total amount of the Oklahoma estate tax due with respect to his estate. Commission contends the proceeds are taxable because of the provisions of paragraph (2) or (3) of sub-section (A) of 68 O.S.1961, § 989e. Additional estate tax in the amount of $12,079.09 because of the four insurance policies involved herein was assessed and paid by the defendant in error as administratrix of the decedent's estate and this action was brought to recover the payment.

The district court, in rendering judgment for the $12,079.09 with interest thereon as provided by applicable statutes, sustained the plaintiff's contention that, because of the provisions of paragraph (6) of sub-section (A) of 68 O.S.1961, § 989e and the opinion of this court in the case of Rogers v. Oklahoma Tax Commission (1952), Okl., 263 P.2d 409, the proceeds of such insurance policies, which, in the circumstances actually existing at the time of the death of Ray Milton Balyeat, were, under the applicable provisions of each of the policies, payable to Jean Savage Balyeat (now Harris) as the surviving wife of the decedent and could not be included in the value of the gross estate of the decedent for estate tax purposes.

Only paragraphs (2), (3) and (6) of sub-section (A) of 68 O.S.1961, § 989e are involved herein, but, in order to show more clearly the purpose sought to be accomplished by that sub-section of our stat-

utes, we also quote paragraph (5) and a portion of paragraph (1) thereof:

"(A) The value of the gross estate, used as a basis for a determination of the value of the net estate, shall be determined by including:

"(1) The value at the time of death of the decedent of all property, real, personal, or mixed, whether tangible or intangible, of which the decedent died seized or possessed, within the jurisdiction of this State, and any interest therein, or income therefrom, including the value of the homestead less the value of decedent's equity or interest therein up to but not exceeding Five Thousand Dollars ($5,000.00) in amount, *which shall pass* to any person or persons, associations or corporations, in trust or otherwise, *by testamentary disposition or by the laws of inheritance or succession of this or any other state or country.*

\* \* \* \* \* \*

"(2) The value of any real or personal property, including the homestead to the extent hereinabove set forth, *passing by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after his death*; provided, that *any transfer* made by the decedent *of a material part of his estate* within two (2) years prior to death, without an equivalent in monetary consideration, shall, unless shown to the contrary, be deemed to have been in contemplation of death, and such *transfers* shall be included at their net value at the date of decedent's death.

"(3) To the extent of any interest *therein* of which the decedent has, at any time, *made a transfer*, in trust or otherwise, *where the enjoyment thereof was subject*, at the date of his death, *to any change through the exercise of a power*, either by the decedent alone or in conjunction with any person, *to alter, amend, or revoke the terms of such trust*, or where the decedent *relinquished any power* in contemplation of his death, or where the decedent *reserved to himself during his life* the income from the property included in any such transfer.

"And to the extent of any interest in property in which the decedent donee has *released a general power of appointment* in contemplation of his death, whether or not the decedent had previously transferred such property.

"(4) \* \* \*

"(5) To the extent of the total amount of the proceeds of insurance *payable to or accruing to the decedent's estate* by virtue of policies upon the life of the decedent \* \* \*.

"(6) To the extent of the excess over Twenty Thousand Dollars ($20,000.00) of the amount *receivable* directly, in trust, or as annuities, *by all other beneficiaries*, or under a joint policy by the survivor, of the proceeds of life insurance, by virtue of policies taken out on the life of the decedent and *in which, at the time of death, the decedent had the right, directly or indirectly, to change the beneficiary or to convert* the policy to his own use. \* \* \*"

Paragraph (6), supra, contains other provisions concerning life insurance but none of them is applicable in the present instance.

Hereinafter, reference to a paragraph number, without further identification, will relate to that paragraph of sub-section (A) of 68 O.S.1961, § 989e, supra.

Rogers v. Oklahoma Tax Commission, supra, was a direct appeal to this court, by the executrix of the will of a decedent, from an order of the Oklahoma Tax Commission, denying her claim for refund of additional estate tax assessed by the Commission on the basis of the amount of the proceeds of two policies of insurance upon the life of the decedent, one of which, in the face amount of $40,000.00, was payable to the insured's wife if she survived him or to the insured's executors or administrators if she did not, and the other one of which, in the face amount of $10,-

000.00, was payable to the insured's children, in equal shares, with a proviso that the share of any child not living at the time the policy matured as a death claim be paid to the wife, if living, and if none of such beneficiaries survived the insured, all of the proceeds were to be paid in one sum to the executors or administrators of the last deceased child. A typewritten rider that was attached to each policy at the time it was issued provided that "All rights, privileges, benefits, options and elections granted to or conferred upon the insured by said policy are hereby vested solely in the said wife, or her legal representatives, it being intended that the insured shall have no legal incidents of ownership in said policy."

 In that case, this court noted that paragraph (5) of the statute (which read the same then as it now does) had no application to either of the two policies because, in the situation existing at the time of the insured's death, the proceeds of neither policy were payable to the insured's estate, although it would have been applicable to the $40,000.00 policy if the wife had not survived the insured. And, in vacating the Tax Commission's order with respect to the proceeds of the two insurance policies, this court held, in the fourth, fifth and sixth paragraphs of its syllabus to that case:

"The rule applied in Oklahoma that all property is subject to taxation does not apply to inheritance or transfer tax. Such a tax is a creature of the Legislature and a statute providing for such a tax is the only authority therefor.

"It is the general rule that, in the absence of a statute to the contrary, the proceeds of a life insurance policy payable to a specific beneficiary and not to the insured or his estate, are not subject to an estate or transfer tax upon the death of the insured, for the reason that the proceeds of such life insurance pass by virtue of the contract of insurance and not by will or the intestate laws of the State.

"Under Tit. 68 O.S.1951 § 989e, the amount receivable under the specified insurance contracts, in excess of $20,000.00, are to be included in the value of the gross estate of a decedent, for taxation purposes, if, at the time of the decedent's death, he had the right directly or indirectly, to change the beneficiary or to convert the policy to his own use."

The court agreed with the contention of the executrix in that case that the above-quoted provisions of the riders attached to the policies as parts thereof clearly precluded the decedent (during his lifetime) of all direct or indirect control over the policies, and particularly of any right or power to change the beneficiaries or, in any manner, to convert the policies to his own use. And, in disposing of a contention by the Tax Commission that, since it was possible for the decedent's executors or administrators, representing his estate, to become the beneficiaries (under the $40,000.-00 policy in which the wife was the primary beneficiary) if the wife died first, the decedent had the right, indirectly at least, to change the beneficiaries, this court said: "As we view the Oklahoma statute the proceeds of these policies cannot be included in the gross estate of the decedent unless the event of the deaths of all of the beneficiaries shall have occurred prior to the death of the insured, so that the right to change beneficiary, directly or indirectly, actually existed at the time of his death. The statute provides for taxation of the proceeds of life insurance policies taken out by decedent, 'and in which, at the time of his death,' he had the right to change beneficiary, etc. Under the policies herein no such right was vested in him at the time of his death." It was in connection with this argument by the Tax Commission that the court noted that, if, at the time of the decedent's death, the proceeds of either policy would, under the applicable provisions of that policy, have been payable to the decedent's executors or administrators, paragraph (5) of the statute would have been applicable to such proceeds.

In the body of the opinion in that case, this court also said (page 413 of the cited report):

" * * * The rights of the named beneficiary arise at the time the contract is made and not upon the death of the insured. The date of death is the time fixed when the insurer becomes obligated to pay. [Citations]

"If statutory authority exists in Oklahoma for the assessment and collection of the tax on the policies involved herein it must be found in Tit. 68 O.S.1951 § 989e, which reads:

" 'The value of the gross estate, used as a basis for a determination of the value of the net estate, shall be determined by including:

" ' * * *

" '(6) To the extent of the excess over Twenty Thousand Dollars ($20,-000.00) of the amount receivable directly, in trust, or as annuities, by all other beneficiaries, or under a joint policy by the survivor, of the proceeds of life insurance taken out by the decedent upon his own life and in which, at the time of death, the decedent had the right, directly or indirectly, to change the beneficiary or to convert the policy to his own use.'

"It is under this section of the statute that the Commission asserts its authority to tax the policies. *If the Commission's authority cannot be sustained under the quoted statute it follows that the proceeds of the policies were erroneously included in the amount of the gross estate and in the computation of the tax. * * *.*" (Emphasis supplied)

In brief, this court held in the Rogers case that, under the general principles of law mentioned therein, the proceeds of insurance policies upon the life of a decedent, which are payable to beneficiaries other than the estate of the decedent, are not subject to inheritance or estate taxes unless the statutes levying the particular inheritance or estate tax involved provide otherwise, and that the Oklahoma statutes provide otherwise but only with respect to any of such policies in which, in the circumstances actually existing at the time of death, the decedent had the right, under the applicable provisions of the policy, directly or indirectly, to change the beneficiary or to convert the policy to his own use.

The four insurance policies involved herein are:

(a) Policy No. 3800740 issued under date of January 12, 1960, by Occidental Life Insurance Company of California, in the face amount of $25,000.00;

(b) Policy No. 1557079 issued under date of February 26, 1960, by The Manufacturers Life Insurance Company, in the face amount of $20,000.00;

(c) Policy No. 3592406 issued under date of November 17, 1960, by Massachusetts Mutual Life Insurance Company, in the face amount of $30,000.00; and

(d) Policy No. 3907483 issued under date of March 25, 1961, by Occidental Life Insurance Company of California, in the face amount of $100,000.00.

Each of the Occidental policies is designated as "Five Year Convertible and Renewable Term Insurance", names the decedent herein as the "insured", and, at the time of the death of the insured, designated Jean Savage Balyeat (now Harris), wife of the insured, as the "owner" of the policy and as the primary beneficiary thereunder, although, prior to April 28, 1961, Ray Morton Balyeat (the father of the decedent) had been designated as the "owner" of policy No. 3800740 and the beneficiary thereunder. From the date of issuance thereof, each of these two policies contained a provision that:

*"Before the death of the Insured,* the owner of this policy alone shall be entitled to all rights granted by this policy or allowed by the Company under this policy. If the owner is a partnership, all rights of the owner belong to the partnership as constituted at the time the right is exercised. If the owner is an individual and dies before the Insured,

all rights of the owner belong to the executor or administrator of the owner unless otherwise provided in this policy." (Emphasis supplied)

Neither of these two policies contains any provision under which any one other than the "owner" of the policy, designated as such in the policy, would be entitled, prior to the death of the insured, to any right granted by the policy or allowed by the insurer under the policy, except that policy No. 3800740 did provide for monthly disability benefits to be made to the insured during any permanent total disability as defined therein.

The Massachusetts Mutual policy is designated as "Ten Year Term" insurance, names the decedent herein as the "insured," and designates Jean Savage Balyeat (now Harris), the wife of the insured, as the "owner" of the policy and as the primary beneficiary thereunder. Concerning the rights of the "owner," this policy provides:

"The rights of the owner are subject to any written assignment received at the Home Office. If this policy does not provide otherwise, during the lifetime of the *insured* and with the consent of any irrevocable beneficiary, the owner may exercise and enjoy every right, privilege, option and benefit granted by this policy or allowed by the Company and may change the succession of ownership of this policy from time to time. Any request for change of ownership and the consent of any irrevocable beneficiary must be written and satisfactory to the Company. No change of ownership will take effect until such request is received at the Home Office. * * *.

"*During the lifetime of the insured* and with the consent of any irrevocable beneficiary, the owner may change the beneficiary from time to time. Any request for change of beneficiary and the consent of any irrevocable beneficiary must be written and satisfactory to the Company. No change of beneficiary will

take effect until such request is received at the Home Office. * * *.

"The owner may assign this policy with the consent of any irrevocable beneficiary. The consent of any irrevocable beneficiary must be written and satisfactory to the Company. * * *;"

and the term "irrevocable beneficiary," as used in the policy, is defined to mean "any beneficiary whose designation cannot be cancelled, changed or recalled without the beneficiary's written consent, satisfactory to the Company." No beneficiary was so designated in the policy, and there is nothing to indicate that any written assignment of any interest in or under the policy was ever received by the Company. Except for provisions under which disability benefits would be payable to the insured during total permanent disability, this policy does not contain any provision under which any one other than the "owner" of the policy, designated therein, would be entitled, prior to the death of the insured, to exercise or enjoy any right, privilege, option or benefit granted by the policy or allowed by the insurer under the policy.

The Manufacturers' policy is designated as "Preferred Life Paid-up at Age 95," insures the life of Ray Milton Balyeat, therein called the "life insured," on behalf of Jean Savage Balyeat (now Harris), the Applicant and "Owner" of the policy, who is designated therein as the "Insured" and as the primary beneficiary thereunder. This policy provides that:

"The Insured may from time to time by a declaration in writing appoint a beneficiary or beneficiaries and may alter or revoke any designation and may apportion or reapportion the insurance monies. If any beneficiary dies before the life insured, the interest of such beneficiary shall revert to the Insured unless otherwise provided in this policy or in a declaration. The Company assumes no responsibility for the validity of any declaration.

"The Insured and *not the life insured may*, without the consent of any bene-

ficiary, receive any benefit, exercise every right (including the right to assign this policy) and enjoy every privilege conferred by this policy or allowed by the Company, unless otherwise provided herein or endorsed hereon."

This policy contains no provision, or endorsement thereon, under which any one other than the "Insured" would be entitled, prior to the death of the "life insured," to receive any benefit, or exercise any right, or enjoy any privilege conferred by the policy or allowed by the insurer. The Tax Commission points out that this policy contains a provision that "Should any policy referred to herein provide for an income, payable by installments if and when the policy matures during the lifetime of the life insured, such installments shall (notwithstanding anything herein to the contrary) be paid to the life insured as provided in the policy and after his death each installment shall be paid as if it were an installment payable under the provisions of Clause 1 of the General Provisions hereof," and argues that this provision makes this policy essentially the same as the insurance policy involved in the case of Estate of Kasishke et al. v. Oklahoma Tax Commission (1955), Okl., 311 P.2d 804 (which will be discussed later in this opinion). However, we find no provision (and the Tax Commission does not point to any provision) in this policy for the payment of any monthly income after maturity of the policy.

Noting first that the term "insured" is not used in the Manufacturers' policy to refer to the person whose life is insured thereunder (referred to therein as the "life insured") but is used in the same sense as the term "owner" is used in the other three policies involved herein, so that, for this purpose, the "insured" in the Manufacturers' policy may be treated as the "owner" thereof, it appears that, although couched in different language (in some instances less detailed, and in some instances more detailed) than that used in the rider attached to the life insurance policy involved in the Rogers case, supra, the provisions in each of the policies involved herein, concerning the rights of the "owner" of the policy during the lifetime of the person whose life is insured under the policy, hereinabove quoted, are, in substance and effect, the same as the provisions in the rider attached to the Rogers policy, concerning the rights of the "wife" of the person whose life was insured under that policy.

■ Consequently, under the principles of law stated and applied in the Rogers case, supra, none of the proceeds of the insurance upon the life of this decedent, provided for in any of the four insurance contracts involved herein, would be includable in the value of the gross estate of the decedent for estate tax purposes, for, in the circumstances existing at the time of the decedent's death, the proceeds of such life insurance policies were, under the applicable provisions of the policies, payable to beneficiaries other than the estate of the decedent, and, under the above-mentioned provisions of the policies and the circumstances existing at the time of his death, he did not, at that time, have the right, directly or indirectly, to change the beneficiary under any of the life insurance policies or to convert any of the life insurance policies to his own use.

■ A part of the Tax Commission's argument is to the effect that the possibility, existing up to the time of the decedent's death, that he would become entitled, during his lifetime, to receive post-maturity benefits under the Manufacturers' policy, and to receive disability benefits under the Massachusetts Mutual policy and one of the Occidental policies, constituted a degree of dominion over these three policies which is tantamount to ownership of the policies and a right, existing in the decedent at the time of his death, to convert each of such policies to his own use, so that the proceeds of these three policies upon the life of the decedent would be includable in the value of the decedent's gross estate for estate tax purposes under the provisions of paragraph (6) of the statute.

However, as noted above, the Massachusetts Mutual policy did not contain any provision under which anything would be paid to the decedent during his lifetime, and we now note that, unlike the endowment benefits involved in the Kasishke Estate case (which is cited by the Tax Commission in support of this part of its argument, and is discussed infra), any disability benefits that might have become payable to the decedent during his lifetime, under the two policies which provided for payment of such benefits during his permanent total disability, would not have affected the life insurance provisions of the policies in any manner, and the possibility, existing during the decedent's lifetime, that the decedent might, during his lifetime, become entitled to disability benefits provided in the insurance contracts could not constitute the right, existing in the decedent at the time of his death, to convert the policies of *insurance upon his life*—which is the only portion of any of the insurance contracts that is involved herein—to his own use, as contemplated by said paragraph (6).

Although the Tax Commission mentions paragraph (3) of the statute, it makes no attempt to demonstrate that the provisions of that paragraph are applicable to the present situation by showing that the enjoyment of any property transferred by this decedent, in trust or otherwise, was subject, at the date of his death, to any change through the exercise of a "power" (either by the decedent alone or in conjunction with any other person) to alter, amend, or revoke the terms of such trust, or by showing that the decedent relinquished any such "power" in contemplation of his death, or by showing that the decedent had reserved to himself, during his life, the "income" from the property included in any transfer of any real or personal property. No such right, or action, on the part of the decedent is apparent from the record herein. Consequently, the only question left for determination is whether or not the situation involved herein is covered by the provisions of paragraph (2) of the statute, under which the value of the decedent's gross estate would include:

"The value of any * * * personal property, * * * passing by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after his death; * * *,"

with the proviso, following that language, that:

" * * * any transfer made by the decedent of a material *part of his estate* within two (2) years prior to death, without an equivalent in monetary consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death, and such transfers shall be included *at their net value at the date of decedent's death.*" (Emphasis supplied)

Since each of the four policies of insurance involved herein was taken out and issued, and the initial premium thereon was paid, more than two years prior to this decedent's death on August 9, 1963, the Tax Commission's argument concerning that proviso to paragraph (2) is based upon the fact that (according to a stipulation entered into in the district court) the decedent paid all of the premiums upon all of the policies except Occidental policy No. 3800740 and paid all of the premiums that became due on that policy after April 28, 1961, when Jean Savage Balyeat became the "owner" of that policy. Its argument concerning the proviso is that the plaintiff failed to meet the burden of providing to the contrary and, therefore, under the proviso, all premiums paid by the decedent within two years prior to his death must be deemed to have been made in contemplation of his death, thus, making *the face amount of each such policy* (which, it was stipulated in the district court, was the value of *the policy*) includable in the value of the gross estate of the decedent under the preceding portion of said paragraph (2). And, apparently in this connection,

the Tax Commission cites, and partially relies upon, that portion of our statutes levying the "gift tax" upon the value of transfers of property by gift which provides that "Where a donor purchases from a life insurance company for the benefit of another a life insurance contract or a contract for the payment of an annuity, the value of the gift is the cost of the contract."

Assuming, without deciding, that that provision of the gift tax statutes would be applicable where a person purchases a policy of insurance, upon his own life for the benefit of another, the tax described in the statute is to be computed against the "cost of the contract" to the donor, not against the face value of the life insurance policy or the proceeds of such policy which, under the policy, are payable to such other person, and, at any rate, the gift tax is not involved in any way in the Commission's assessment of additional tax involved herein.

The Tax Commission's argument concerning the proviso to paragraph (2) of the statute overlooks the fact that, under that proviso, the estate tax is to be computed against *the net value*, as of the date of the decedent's death, *of the property transferred by the decedent* within two years prior to his death (which, under the Tax Commission's own argument that none of these life insurance policies had any value *during the decedent's lifetime*, could not exceed the total amount of the premiums paid on these policies by the decedent during the last two years of his life). And the Commission's argument concerning said paragraph (2) also overlooks the fact that, under its own language, the proviso does not apply simply to transfers made by the decedent within two years prior to his death without an equivalent in monetary consideration, but applies only to transfers made by the decedent "of a material part of his estate" within two years prior to his death without an equivalent in monetary consideration. The estate tax return filed by the administratrix in this case

(which does not include any value for any of these four policies) shows the value of the decedent's gross estate as $115,106.10, but the Tax Commission made no attempt to show the total amount of premiums paid by the decedent on these policies, or on any of them, or to show that any one premium, or the total of all of the premiums, paid by this decedent would constitute "a material portion of his estate."

All of the rest of the Tax Commission's argument depends upon the decedent's payment of each premium—whether paid during the last two years of his life or paid prior thereto—as constituting a "transfer" intended to take effect in possession or enjoyment at or after the death of the grantor, vendor, or donor, within the contemplation of paragraph (2) of the statute; and, insofar as legal principles are concerned, such argument is bottomed upon what the Commission refers to as the "economic benefits doctrine" which is summarized in the herein-emphasized portion of the next-to-last paragraph of the opinion of this court in the case of Estate of Kasishke et al. v. Oklahoma Tax Commission, supra:

> "In a rather exhaustive opinion in In re Bass' Estate, 200 Okl. 14, 190 P.2d 800, we held that under Oklahoma's estate tax statutes *the incidence of the tax is the shifting and transfer of economic benefits from the dead to the living* and that where the donor retains the right to take income from property transferred during his life, a releasing of this right upon his death furnishes an adequate basis for imposing an estate tax upon the value of the property transferred. * * *."

The court then said, in its concluding paragraph: "For the reasons stated, we are of the opinion that the proceeds of the policy are subject to estate tax under the provisions of Section 989e(A) (2) and (3), supra, and the Order of the Tax Commission assessing estate taxes is affirmed." However, the court's syllabus discloses that it held that the transfer in question therein was subject to estate taxes as a transfer

"intended to take effect in possession or enjoyment after death"—which are covered by paragraph (2) but, apparently, not by paragraph (3) of the statute.

The Tax Commission contends herein that the "economic benefits doctrine" was not considered by this court in the Rogers case, supra, and that, in the Kasishke case, this court modified its decision in the Rogers case by applying that doctrine and paragraphs (2) and (3) of the statute to a "life insurance" policy.

Although the insurance policy involved in the Kasishke case, which was a single ($50,000.00) premium, paid-up policy, did provide insurance on the life of the decedent, it also contained "endowment" provisions which would mature on the tenth anniversary of the date of the issuance of the policy. The policy designated the decedent's wife as the primary beneficiary and various relatives of the decedent as alternative beneficiaries, with his estate as beneficiary if none of them survived him. Under the policy as issued, the decedent had the right to change beneficiaries, take the cash surrender value provided in the policy, and to hypothecate the policy. Under the terms of the policy, the insurer agreed to pay the sum of $61,345.93 to the insured, if living, on the date the policy matured as an endowment, or to pay the same amount to the beneficiaries as therein provided upon the decedent's death prior to the date the policy would mature as an endowment. If the policy matured as an endowment, the decedent had the option of taking the full amount thereof at that time or of leaving it "on deposit" with the insurer during his lifetime, to be paid to the designated beneficiaries upon his death, but with the interest accruing thereon to be paid monthly to the decedent during his life. The policy matured as an endowment and the insurer issued to the decedent a certificate of deposit in the proper amount and, from then until his death, paid the interest accruing thereon to the decedent as provided in the policy. The Tax Commission assessed the estate tax on the amount represented by this certificate of deposit and the estate appealed to this court.

Although, about a month after the issuance of the Kasishke policy, the decedent had executed and delivered to the insurer a purported assignment of the policy and all rights and benefits therein to a trustee for the use and benefit of the beneficiaries as designated in the policy and in accordance with their respective interests as such beneficiaries, the instrument expressly provided that the trustee should have no power or authority to change any of the provisions of the policy concerning any payments to be made thereunder, or to surrender the policy for its cash value, or to hypothecate the policy, so this court held that those provisions of the policy, including the provision for the interest on the endowment account to be paid to the insured, were not affected by the assignment. On this basis, this court said in that case that, if the money involved be treated as the proceeds of the life insurance originally provided therein, they would not escape the estate tax under the Rogers case (cited on behalf of the estate in the Kasishke case) but, to the contrary, would be covered by paragraph (6) of the statute.

The court then held that, under authorities cited therein, the insurance contract involved in the Kasishke case ceased to be a life insurance policy when it matured as an endowment and represented a liquidated indebtedness, and (as disclosed by the above quotations), based upon the decedent's retention of the right to receive the interest-income therefrom during his lifetime, and the Bass case, held that the provisions of paragraphs (2) and (3) of the statute were applicable to the transaction involved therein. The Kasishke opinion did not modify the decision of this court in the Rogers case, but, in fact, distinguished the situations involved in those cases and left the Rogers case as the law with respect to the applicability, or non-applicability, of Oklahoma's estate tax statutes, as then in force, to the proceeds of insurance upon

the life of a decedent, which are payable to beneficiaries other than the estate of the decedent, in which policies the decedent, at the time of his death, did not have the right, directly or indirectly, to change the beneficiaries or to convert the life insurance policy to his own use.

Although paragraph (6) of the statute was amended in 1961, subsequent to the date the Rogers decision became effective, it does not appear that such amendment would, in any way, affect the impact of that decision. That amendment simply substituted the words "of the proceeds of life insurance, *by virtue of policies taken out on the life of the decedent*" for the words "of the proceeds of life insurance *taken out by the decedent upon his own life*," appearing in the same paragraph at the time involved in the Rogers case. After the amendment, the situation was the same whether the insurance policies in question had been taken out by the decedent on his own life or had been taken out by some one else having an insurable interest in his life. Neither version of the paragraph expressly makes its application depend upon who paid the premiums necessary to make, or to keep, such a policy effective, although, by applying only to policies "taken out by the decedent upon his own life," the earlier version, involved in the Rogers case, clearly contemplated payment of the necessary premiums by the decedent in some, if not in all, instances.

Although not mentioned in the Rogers opinion, the parties had stipulated at the hearing before the Tax Commission that (among other things) "the initial and only premium paid on said insurance policies was paid from funds advanced by the decedent," and the executrix's claim for refund was presented to the Commission on such stipulation of facts. The present case cannot be distinguished from the Rogers case on the basis of payment of premiums by the decedent in the present case.

In re Bass' Estate (1947), 200 Okl. 14, 190 P.2d 800, cited by this court in the Kasishke case and by the Tax Commission

in the present case, involved property which the decedent had conveyed to an irrevocable twenty year trust. Under the trust agreement, he was to (and did) convey all of his property to the trust entity and was to (and did) receive all of the net income from the trust estate during his lifetime, with a provision that, if he should die prior to the expiration of the specified trust period (which he did do), all of his interest in the trust estate would, thereby, be extinguished and all of the net income from the trust estate would, thereafter, be divided equally among his children as the beneficiaries of the trust. He died in 1938, after Oklahoma's 1935 act levying an "estate tax" (which this court explained, in that opinion, as a death tax imposed upon "the privilege of transfer at death," as distinguished from one imposed upon "the right to receive") had been enacted as a "substitute" for the prior act and had become effective. After a hearing, the Oklahoma Tax Commission entered an order which applied the 1935 act and calculated the estate tax in accordance with that act, and the representative of the decedent's estate appealed to this court from that order.

This court, in the Bass case, held that the transfer was taxable as a transfer "intended to take effect in possession or enjoyment" at or after the decedent-transferor's death *because the decedent had reserved to himself, during his lifetime, the income from the property transferred by him during his lifetime*—the "economic benefits" derived from the ownership of income-producing property—and, therefore, under the terms of the conveyance (which discloses the intent of the decedent in making the conveyance), the transfer *of the property* would not become fully effective, "in possession or enjoyment" of the transferred property, until the right to receive the income from the property conveyed should pass from the transferor upon his death.

Analysis of the Bass opinion discloses that the statements made or quoted therein to the effect that it is the policy of the law

that the owner of property shall not defeat or evade the tax by any form of conveyance or transfer during his life, where, after death, the income, profit or enjoyment of the property inures to the benefit of those who are not exempted, refer to death tax statutes which, like the Oklahoma act of 1915, impose an "inheritance tax" with respect to transfers by the decedent which are intended to take effect at or after his death as well as with respect to transfers by will or intestate succession, and are not intended to mean that every transaction under which a living person receives any economic benefit upon the death of a decedent is covered by every death tax statute, without exception; and that the "economic benefit" doctrine, as applied in the Bass opinion and in the cases referred to therein, does not, of itself, impose a death tax upon anything, but is a statement of the legal theory upon which any death tax law must be based in order to justify the imposition of such a tax, even with respect to transfers by will or intestate succession. There is no conflict whatsoever between that legal theory and the principle of law stated in the Rogers case, supra, to the effect that a death tax is a creature of the Legislature and authority for collecting the tax with respect to any particular transfer must be found in the statutes which impose the tax.

 Although not mentioned in the Bass case, it would appear to be axiomatic that a death tax can be imposed only with respect to property which, at the death of the particular decedent, he owned, or possessed some power, or some right to control, the transfer of which does not become fully effective and complete until his death.

Under the policies of life insurance involved in the present case, the decedent, at the time of his death, had no control whatsoever over any of the policies or any right, privilege or option provided therein, and had no control whatsoever over the proceeds of such life insurance or the payment thereof—the entire transaction was

fully and completely effective, and had been fully and completely effective during each successive premium-period upon payment of the prescribed premium for that premium-period. And his transfer of money to the insurer, each time he paid one of the premiums, was fully and completely effective when he paid the premium, for his right to the possession and enjoyment of the amount so paid terminated at that time.

 Neither the Kasishke case, nor the Bass case nor any of the cases mentioned therein, supports the Tax Commission's argument that, under the "economic benefit" doctrine or theory, the life insurance transactions involved in the present case are covered by the provisions of paragraph (2) of the statute.

 Even if what has been said above concerning the "economic benefits doctrine" relied upon by the Tax Commission did not answer the Commission's argument to the effect that all of the "economic benefits" of these policies passed to the designated beneficiaries by, and upon, the death of the insured and, since three of the four policies had no cash surrender or loan value at the time of the insured's death, he must have intended that the "economic benefits" of those policies be effective at or after his death, that argument, as well as the Commission's argument to the effect that the possibility, existing up to the time of the death of the insured, that he would become the beneficiary under one or more of the policies if his wife and all of their children predeceased him and, thus, in effect, the "owner" of such policies, resulted in a possibility existing up to the time of his death, of his having the right, at the time of his death, directly or indirectly, to change the beneficiaries or to convert such policies to his own use, within the contemplation of paragraph (6) of the statute, is answered by the principles, stated in the Rogers opinion, to the effect that the rights of the designated beneficiaries (which would include rights as contingent beneficiaries) arise at the time a life insurance

contract is made and not upon the death of the insured, which simply fixes the date as of which the insurer becomes obligated to pay the proceeds of the life insurance to the proper beneficiary, and that the question of whether or not the decedent, at the time of his death, had the right, indirectly or directly, to change the beneficiaries or to convert the policy to his own use, as well as the question as to who are the beneficiaries under the life insurance policy, is to be determined in the circumstances actually existing at the time of the insured's death, not by what might have occurred if the insured had lived long enough for the situation to change.

It is also noted that while, under one of the Occidental policies (No. 3800749), the contingent beneficiaries were "The Executors, Administrators or Assigns of the last to die of the Insured and the said Jean Savage Balyeat," and the other Occidental policy provided that a specified portion of the net proceeds of the life insurance provided for therein "shall be paid to Jean Savage Balyeat, Wife of the Insured, if living, otherwise to the Executors, Administrators or Assigns of the Insured," neither the decedent nor his executors, administrators or assigns were designated as beneficiaries, contingent or otherwise, in either of the other two policies, and none of the four policies contained any provision under which the decedent would have become the "owner" of the policy, and, under each of the policies, the "owner" thereof was the only one who had any authority to change the beneficiaries or to exercise any of the other rights, privileges or options provided in the policy or allowed by the insurer. So if the decedent had lived long enough to acquire any of those rights, his acquisition thereof would not have been by virtue of the provisions of any of these policies but would have been by will, intestate succession, or assignment from Jean Savage Balyeat who was the "owner" of the policies and of all of such rights at the time of the decedent's death.

The Tax Commision in its reply brief herein contends that " * * * the sole purpose of the provisions of the policies herein was to escape estate taxes, there was no other purpose * * *," and that "defendant in error would have this Court give credence to a concocted nefarious scheme of form to evade and/or avoid just taxation, when justice and reason demands, and the law asserts and proclaims, that the incidence of taxation depends upon substance, not the form of the transactions * * *." While it may be true that the incidence of death taxation, such as inheritance taxes or estate taxes, depends upon the substance of the transaction rather than upon the form of words used in the transaction, it is also true, as stated in effect by this court in the Rogers case, supra, that a death tax applies only to those transactions which the statutes levying such a tax say are covered thereby. And, as a very learned and highly respected judge once said, "There is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. Nobody owes any public duty to pay more than the law demands."

There is no essential difference between the policies of life insurance involved in the case of Rogers v. Oklahoma Tax Commission (1952), Okl., 263 P.2d 409, and the policies of life insurance involved in the present case, and there is no essential difference (insofar as the issues in the present case are concerned) between the pertinent provisions of the estate tax statutes which were in force at the time involved in the Rogers case and the pertinent provisions of the estate tax statute which were in force at the time involved in the present case. That case fully supports the judgment of the trial court in the present case. It has not been overruled or modified in the meantime, and the Tax Commission has not shown any logical reason why we should overrule, or even modify, that decision at this time.

Judgment affirmed.

All the Justices concur.