WATERS AND WATER RIGHTS
The authorization found in 82 O.S. 934 [82-934] (1977) and 82 O.S. 936 [82-936] (1971) that the Pollution Control Coordinating Board act on its own initiative to prevent or abate pollution if the Board finds, by concurring vote of at least five members thereof, that the responsible agency has failed, refused or neglected to take action to abate or prevent such pollution, does include pollution caused by the improper handling, hauling, storage and disposition of salt water, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing and processing of oil and gas. The Attorney General has considered your request for an opinion wherein you ask the following question: "Does the authorization of 82 O.S. 934 [82-934] (1977) and 82 O.S. 936 [82-936] (1971) that the Pollution Control Coordinating Board act on its own initiative to prevent or abate pollution if the Board finds, by concurring vote of at least five members thereof, that the responsible agency has failed, refused or neglected to take action to abate or prevent such pollution, include pollution caused by the improper handling, hauling, storage and disposition of salt water, mineral brines, waste or other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, and processing of oil and gas? The Corporation Commission, by statute, is authorized to exercise certain jurisdiction with regard to pollution resulting from oil and gas industry activities. In the Second Regular Session of the Thirty-sixth Oklahoma Legislature of 1978, 63 O.S. 2756 [63-2756] (1977) was amended and now reads in pertinent part as follows: "2. The Corporation Commission of Oklahoma is hereby vested with exclusive jurisdiction, power and authority, and it shall be its duty to make and enforce such rules, regulations and orders governing and regulating the handling, hauling, storage and disposition of salt water, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, and processing of oil and gas, including reclaiming of oil from tank bottoms located on leases and tank farms located outside the boundaries of a refinery. "The Corporation Commission shall promulgate such rules and regulations as are reasonable and necessary for the purpose of preventing the pollution of the surface and subsurface waters in the State. ." (Emphasis added) It is evident from reading the above-quoted statutory section that the Corporation Commission of Oklahoma is vested with exclusive jurisdiction; however, this exclusive jurisdiction extends only to the promulgation and enforcement of rules, regulations and orders governing and regulating the handling, hauling, storage and disposition of salt water mineral brines, waste or other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, and processing of oil and gas, including reclaiming of oil from tank bottoms located on leases in tank farms located outside the boundaries of a refinery. Title 82 O.S. 936 [82-936] (1971) provides in pertinent part as follows: "C. Any pollution complaints may be filed with the Board. Upon receipt thereof, the directors shall docket said complaint in a record to be kept for that purpose, shall assign the same a number and shall immediately refer a copy of the complaint to the agency or agencies having primary jurisdiction. All agencies shall file with the Board a report of the findings and action taken on any such complaint referred to it. If the complaint or the director is dissatisfied with the findings or action, the same shall be placed on the calendar for the next board meeting. "D. Upon the request of the director, all member agencies shall file with the Board a report of the findings and action taken on pollution complaints originating with such agencies together with a copy of the complaint. "E. Whenever the Board has reason to believe that a violation of any provision of this act or any regulation or order of the Board or any member agency thereof has occurred, or when the agency charged with the duty and responsibility of abating and preventing pollution of the environment has failed, refused or neglected to take action, or has requested the Board to take action, as provided in 82 O.S. 934 [82-934](c), the Board shall cause a written complaint to be served on the alleged violator or violators . . ." (Emphasis added) Title 82 O.S. 934 [82-934] (1977) provides in pertinent part as follows: "The Board is hereby vested with the following powers and duties: ". . . "C. To act on its own initiative, as provided in 82 O.S. 936 [82-936] of this title, to prevent or abate any pollution of the environment of the state at any time the Board finds, by concurring vote of at least five members thereof, that the agency having jurisdiction over such pollution has failed, refused or neglected to take action to abate or prevent such pollution in discharge of the duties and responsibilities imposed upon such agency by the laws of the state; or to take such action when requested in writing to do so by the agency or agencies affected; or when no agency has jurisdiction to abate or prevent such pollution; or when there is overlapping authority or conflicting authority among state agencies; or when a state agency has jurisdiction but no enforcement authority; the Board may then promulgate rules and regulations necessary to prevent or abate such pollution . . ." It is evident from a reading of the three above-quoted statutory sections that, although the Corporation Commission is vested with "exclusive jurisdiction", this jurisdiction only extends to the power, authority and duty to make and enforce rules and regulations. However, should the Pollution Control Coordinating Board find, through the methods authorized by 82 O.S. 936 [82-936] and 82 O.S. 934 [82-934] as quoted above, that the Corporation Commission, having been assigned the investigation of such a complaint, has failed, refused or neglected to act, then it is incumbent upon the Pollution Control Coordinating Board to assume jurisdiction of the matter and act accordingly. It should be noted herein that if a complainant is not satisfied with the action taken by the Corporation Commission, said action by the Corporation Commission is in no way the complainant's final remedy. The complainant may seek further relief from the Pollution Control Coordinating Board, in addition to seeking appellate relief in the Supreme Court of the State of Oklahoma. The terminology "exclusive jurisdiction" does not divest the Pollution Control Coordinating Board of its statutory authority as granted in 82 O.S. 934 [82-934] and 82 O.S. 936 [82-936], supra. The controlling words in 63 O.S. 2756 [63-2756] are, to-wit: "vested with exclusive jurisdiction, power and authority, and it shall be its duty to make and enforce such rules, regulations and orders governing and regulating . . ." This language is not indicative of legislative intent to decree that the Corporation Commission, by failing, refusing, or neglecting to act, could thereby exhaust a complainant's administrative remedies. To protect citizens against such an occurrence was the specific reason for the creation of the Pollution Control Coordinating Board. If the legislature had intended that no complainant would ever have recourse to the Pollution Control Coordinating Board regarding a pollution complaint involving pollution caused by the oil and gas industry, it would have used language directly so stating. To interpret the language of 63 O.S. 2756 [63-2756] (1978) to be in derogation of the possible ultimate jurisdictional authority of the Pollution Control Coordinating Board is to read language into the statute (63 O.S. 2756 [63-2756]) which simply is not there. A basic principle of statutory interpretation is that nothing which is not within the manifest intention of the Legislature as gathered from the statute itself may be read into the statute. A statute should not be construed more broadly than its terms require. See American-First Title Trust Co. v. First Federal Savings Loan Assoc. of Coffeyville, Kansas, 415 P.2d 930. Furthermore, since the status of the Corporation Commission on the Pollution Control Coordinating Board is equal to all the other Board members, the pollution-related statutes of both the Commission and the Board should be construed harmoniously. Where two Acts or parts of Acts are reasonably susceptible of a construction that will give effect to both and to words of each, without violence to either, it should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict. See R. V. McGinnis Theatres Pay T.V.I, Inc. v. Video Independent Theatres, Inc., 262 F. Supp. 607, and Rogers v. Oklahoma Tax Commission, 263 P.2d 409. In construing together the authority of the Commission and the Board with regard to pollution issues, it is evident that if 63 O.S. 2756 [63-2756] were construed in such a fashion as to deny an oil or gas related pollution complainant access to the Board, such denial would be an impermissible encroachment upon the constitutional right of equal protection of the law. Such an interpretation would allow all pollution complainants access to the Board if the agency with primary jurisdiction had failed, refused or neglected to act, but would deny such right of access to oil and gas related pollution complainants. An intention on the part of the Legislature to single out one set of litigants for treatment different from that accorded to another group cannot be assumed. Letteer v. Conservancy Dist. No. 30, in Tulsa, Osage, Rogers and Washington Counties, 385 P.2d 796. In construing statutes the Courts do not presume that the Legislature has intended to unjustly discriminate between different cases of the same kind, but adopt that construction which will insure the uniform operation of the statute. See Magnolia Pipe Line Co. v. Oklahoma Tax Commission, 167 P.2d 884, and Lancaster v. State ex rel. Harrod, 426 P.2d 714. In addition to a possible denial of equal protection, an interpretation of 63 O.S. 2756 [63-2756] which would preclude all jurisdiction of the Board under any circumstances would lead to an absurd result in that it would create an imbalance of power on the Board. Title 82 O.S. 932 [82-932] (1977) created a nine member Pollution Control Coordinating Board, each member agency exercising one vote on issues placed before the Board. By virtue of 82 O.S. 934 [82-934] and 82 O.S. 936 [82-936], as quoted above, any agency's action with regard to a pollution complaint may be reviewed by the Board, and jurisdiction assumed, if the Board finds that statutory prerequisites for assumption of jurisdiction prevail. By interpreting 63 O.S. 2756 [63-2756] in a fashion exempting the Corporation Commission's actions, with regard to an oil or gas related pollution complaint, from review by and possible jurisdiction of the Board, a situation would be created whereby the Commission would function as a member of a coordinating board, retaining an equal voice in determining the manner in which the Board coordinated activities of other member agencies, yet not to be subject to any of these coordinating efforts. Such a result would defeat the very purpose of the Board and be highly inequitable. It has long been an adopted precept of statutory construction that if one interpretation of a particular statute, construed alone, would defeat the intent of the Legislature as shown by other enactments relating to the same subject and enacted according to a general purpose in accomplishing a particular result, such a construction should not be adopted. State ex rel. Hampton v. Oakes, 281 P.2d 749. By amending 63 O.S. 2756 [63-2756] to include the word "exclusive" before the word "jurisdiction" the Legislature did not defeat the Board's possible assumption of jurisdiction. It merely manifested the intent that the Commission had primary authority to promulgate pollution related rules and regulations and enforce same in connection with oil and gas operations. The administrative procedures available to any pollution complainant, and the authority of the Board itself, were not changed thereby. In construing any legislative enactment the presumption is that the Legislature does not intend to make any change in existing law, except as expressly declared, and where an act creating a remedy or right does not prescribe the procedure therefor, it will be presumed that the general mode of procedure was intended, unless expressly excluded. See Caldwell v. Oldfield, 98 P. 925 and Caldwell v. Hooker, 98 P. 964. It is, therefore, the opinion of the Attorney General that your question be answered in the affirmative. The authorization found in 82 O.S. 934 [82-934] (1977) and 82 O.S. (1971) 936 that the Pollution Control Coordinating Board act on its own initiative to prevent or abate pollution if the Board finds, by concurring vote of at least five members thereof, that the responsible agency has failed, refused or neglected to take action to abate or prevent such pollution, does include pollution caused by the improper handling, hauling, storage and disposition of salt water, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, and processing of oil and gas. (PAUL C. DUNCAN) (ksg)